FILED
RECEIVED
SERVED ON
COUNSEL/PARTIES OF RECORD

AUG 2 7 2010

1

2                    IN THE UNITED STATES DISTRICT COURT

3                         FOR THE DISTRICT OF NEVADA

4

5   JOHN NEFF,                          )          3:09-cv-00271-HDM-VPC
                                        )
6            Plaintiff,                  )
                                        )
7        v.                              )          **REPORT AND RECOMMENDATION**
    ELDON K. McDANIEL, *et al.*,         )          **OF U.S. MAGISTRATE JUDGE**
8                                        )
                                        )          August 27, 2010
9            Defendants.                 )
    _____ )

10

11        This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior

12   United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant

13   to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. John Neff ("plaintiff"), an inmate at Ely State Prison

14   ("ESP"), is proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983 (#37).

15   Defendants removed this action to federal court on May 26, 2009 (#1). The court screened plaintiff's

16   complaint (#11) and filed it on July 6, 2009 (#12). Defendants filed a motion to dismiss (#13). On

17   February 22, 2010, the District Court issued an order dismissing some of plaintiff's claims with leave

18   to file an amended complaint (#33). Before the court is plaintiff's first amended complaint (#37).

19                            **I. Screening Standard**

20        The court must screen plaintiff's complaint pursuant to 28 U.S.C. § 1915A. Federal courts

21   must conduct a preliminary screening in any case in which a prisoner seeks redress from a

22   governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The

23   court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail

24   to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is

25   immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). To state a claim under 42 U.S.C. § 1983,

26   a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of

27   the United States was violated, and (2) that the alleged violation was committed by a person acting

28   under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). *Pro se* pleadings, however,

1   must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d. 696, 699 (9th Cir. 1988).

2   Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted

3   by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520 (1972)

4   (per curiam).

5         Dismissal of a complaint for failure to state a claim upon which relief may be granted is

6   provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard

7   under § 1915(e)(2) when reviewing the adequacy of a complaint or amended complaint. Review

8   under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Laboratory Corp.*

9   *Of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only

10   if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle

11   him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this

12   determination, the Court takes as true all allegations of material fact stated in the complaint, and the

13   Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74

14   F.3d 955, 957 (9th Cir. 1996). While the standard under Rule 12(b)(6) does not require detailed

15   factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp.*

16   *v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). To survive a motion to dismiss, a complaint must

17   contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its

18   face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim

19   has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

20   reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 1955. A formulaic

21   recitation of the elements of a cause of action is insufficient. *Id.*; *see Papasan v. Allain*, 478 U.S.

22   265, 286 (1986).

23         All or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the

24   prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal

25   conclusions that are untenable (*e.g.* claims against defendants who are immune from suit or claims

26   of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful

27   factual allegations (*e.g.* fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319,

28

-2-

1   327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).   When a court

2   dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint

3   with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the

4   deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d. 1103, 1106 (9th

5   Cir. 1995).

6                          **II. The Instant Complaint**

7          This court has screened plaintiff's first amended civil rights complaint pursuant to 28 U.S.C.

8   § 1915A. Plaintiff brings this action against the following individuals: Arthur Neagle, Lieutenant

9   at ESP; Ronald Bryant, Sergeant at ESP; Eldon K. McDaniel, Warden of ESP; M. Oxborough, a

10  caseworker at ESP; Adam Endel, Associate Warden of Prisons at ESP; and Debra Brooks, Associate

11  Warden of Operations at ESP. Plaintiff seeks declaratory, injunctive, and monetary relief.

12  **A.      Allegations in Count I**

13         In count I, plaintiff claims that defendant Neagle retaliated against him for the exercise of his

14  religious beliefs (#37, p. 11). Plaintiff's religion, Asatru or Odinism, apparently prohibits close

15  contact with illness. *Id.* at pp. 4-5. Based on his religious beliefs, plaintiff refused to return to his

16  cell because his cellmate allegedly had Hepatitis C. *Id.*   Prison officials charged plaintiff with

17  "disobeying a direct order" and "disruptive demonstration or practice." *Id.* at 5. At his disciplinary

18  hearing, plaintiff informed defendant Neagle that "as a religious tenet of Odinism, [plaintiff was] not

19  allowed to have close contact with people who have illness or disease." *Id.* Nonetheless, defendant

20  Neagle found plaintiff guilty of the violating prison rules and placed plaintiff in disciplinary

21  segregation for fifteen days. *Id* at 5.

22         Also in count I, plaintiff claims that defendant Bryant seized his personal and legal property

23  in retaliation for the exercise of his religious beliefs. *Id* at 11. Plaintiff notes that defendant Bryant

24  "took plaintiff's address book claiming it contained the names and numbers of [gang] members."

25  *Id.* at 8. Plaintiff disagrees and asserts that the information in the address book was for use in a legal

26  proceeding.   In addition to this claim against defendant Bryant, plaintiff further claims defendant

27  McDaniel violated his constitutional rights by "upholding [defendant] Bryant's actions in reference

28                                          - 3 -

1  to the address book." *Id* at 11.

2       Also in count I, plaintiff claims that defendant McDaniel has violated his First Amendment

3  rights because he has not allowed law clerks to come to the housing units, and he has implemented

4  a paging system.

5  **B.**    **Allegations in Count II**

6       In count II, plaintiff next claims that defendant McDaniel violated his Fourteenth

7  Amendment due process rights when he "enacted a [prison] rule without enabling legislation known

8  as 'I.P. 5.13 (Now Operational Procedure - 'OP' - 5.13.)," which imposed sanctions "not authorized

9  by the state code of penal discipline." *Id* at 5.  Specifically, plaintiff claims that the procedure

10  imposes sanctions that exceed and are contrary to state law (Nevada Revised Statutes section

11  209.246) and corresponding state regulations (Administrative Regulation 707).  *Id.*

12       Also in count II, plaintiff claims that defendants Oxborough, Brooks, Endel, and McDaniel

13  violated his due process rights when they kept him in administrative segregation for a total of 167

14  days without any hearing. *Id* at 10.

15       In count II, plaintiff further claims that defendant Bryant moved him to a new cell in

16  administrative segregation and confiscated the entirety of plaintiff's property; leaving him with no

17  clothing, soap, shampoo, or hygiene items for two days. *Id.* at pp. 8, 11, 12.

18                **III.  Screening**

19  **A.**    **Count I: First Amendment Claims**

20      **1.**    **Retaliation**

21          **a.**    **Defendant Neagle**

22       Plaintiff maintains that defendant Neagle gave him fifteen days in disciplinary segregation

23  in retaliation for exercising his religious beliefs.  Specifically, plaintiff contends that his religious

24  beliefs prohibit close contact with illness.

25       "Within the prison context, a viable claim of First Amendment retaliation entails five basic

26  elements: (1) [a]n assertion that a state actor took some adverse action against an inmate (2) because

27  of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his

28  - 4 -

First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005) (citations omitted); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997).

Here, accepting all plaintiff's alleged facts as true, plaintiff alleges that defendant Neagle (1) punished him with disciplinary segregation (2) because of (3) plaintiff's religious beliefs, (4) which chilled his religious exercise and (5) did not reasonably advance a legitimate correctional goal. Therefore, the court finds that he states a colorable retaliation claim.

            **b.**    **Defendant Bryant**

Plaintiff contends that defendant Bryant took plaintiff's address book in retaliation for his legal activities and religious beliefs. As stated above, there are five essential elements to maintain a claim for retaliation.

Here, plaintiff states a claim that defendant Bryant (1) confiscated plaintiff's property (2) because of (3) plaintiff's constitutionally protected activity in pursuit of a lawsuit and his Odinist religion, (4) which chilled the exercise of his constitutional rights, and (5) did not reasonable advance a legitimate correctional goal. Therefore, he states a colorable retaliation claim against defendant Bryant.

In addition to plaintiff's claim against defendant Bryant with respect to the address book, plaintiff also appears to state that defendant Bryant took all of his personal property in retaliation for his religious beliefs. Plaintiff styles this as a due process claim; however, the court finds that it more properly states a claim for retaliation.

In sum, plaintiff states a claim for retaliation against defendant Bryant (1) for seizure of the address book and (2) seizure of other property while in administrative segregation.

            **c.**    **Defendant McDaniel**

Plaintiff alleges that defendant McDaniel is liable for "upholding" defendant Bryant's actions regarding the address book.

In a section 1983 claim, "a supervisor is liable for the acts of his subordinates [1]'if the supervisor participated in or directed the violations, or [2] knew of the violations of subordinates and

- 5 -

1  failed to act to prevent them.'" *Corales v. Bennet*, 567 F.3d 554, 570 (9th Cir. 2009) (citations

2  omitted). "The requisite causal connection may be established when an official sets in motion a

3  'series of acts by others which the actor knows or reasonably should know would cause others to

4  inflict' constitutional harms." *Id.*

5      Here, plaintiff contends that defendant McDaniel upheld defendant Bryant's actions. While

6  it is clear that plaintiff has not specifically alleged the participation of defendant McDaniel in the

7  search and seizure of the property, on the court's liberal reading of the complaint, he has sufficiently

8  alleged that defendant McDaniel was aware of Bryant's actions and did nothing to prevent them.

9  This would suggest that he knew of Bryant's retaliatory actions and failed to prevent them.

10  Therefore, the court finds that plaintiff has stated a colorable claim against defendant McDaniel for

11  retaliation.

12      **2.    Access To Courts**

13      In count I, plaintiff alleges a continuing violation of his constitutional rights because

14  defendant McDaniel (1) prevents law clerks from visiting the housing units, and (2) has implemented

15  a "paging system" that plaintiff alleges is unconstitutional.

16      "The fundamental constitutional right of access to the courts requires prison authorities to

17  assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with

18  adequate law libraries or assistance from persons trained in the law." *Lewis v. Casey*, 518 U.S. 343,

19  346 (1996). A prisoner claiming inadequate access to the courts must establish that he or she

20  suffered actual injury. *See Lewis* 518 U.S. at 351. The inmate must allege that the shortcomings in

21  the library or legal assistance program hindered his efforts to pursue a legal claim. *Id.* For example,

22  "[h]e might show . . . that a complaint he prepared was dismissed for failure to satisfy some technical

23  requirement which, because of deficiencies in the prison's legal assistance facilities, he could not

24  have known." *Id.*

25      Here, plaintiff merely voices a generalized grievance concerning the state of his access to

26  legal materials. Plaintiff's assertion that defendant McDaniel does not allow law clerks to visit the

27  housing units does not provide sufficient factual content to enable the claim to proceed. In addition,

28
                                    - 6 -

1  the court need not accept as true plaintiff's legal conclusion that the paging system is

2  unconstitutional.  Most importantly, plaintiff has not pled any facts to show that he has suffered

3  "actual injury." Accordingly, the court will dismiss this claim without prejudice for failure to state

4  a claim upon which relief can be granted.

5  **C.    Count II: Fourteenth Amendment Due Process**

6  **1.    Defendant McDaniel**

7        Plaintiff contends that defendant McDaniel violated his due process rights under the

8  Fourteenth Amendment when he enacted an operating procedure, which resulted in plaintiff's loss

9  of certain privileges.

10        In order to state a cause of action for deprivation of due process rights, a plaintiff must first

11  establish the existence of a liberty interest for which the protection is sought.  Liberty interests arise

12  from the Due Process Clause itself or from State law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

13  With respect to state-created liberty interests, until *Sandin v. Conner*,515 U.S. 472 (1995), inmate

14  litigants argued that the mandatory language in prison regulations created liberty interests.  The

15  *Sandin* Court abandoned this approach, and instead, courts were to focus on the nature of the

16  deprivation to determine the existence of a liberty interest.  *Id.*  State created liberty interests

17  continue to exist, but they are limited to freedom from restraint which "imposes atypical and

18  significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

19  Under *Sandin*, a factual comparison must be made, "examining the hardship caused by the prisoner's

20  challenged action in relation to the basic conditions of life as a prisoner." *Jackson v. Carey*, 353

21  F.3d 750, 755 (9th Cir. 2003).  "Specifically, we look to three guideposts by which to frame the

22  inquiry: (1) whether the challenged condition mirrored those conditions imposed upon inmates in

23  administrative segregation and protective custody, and thus comported with the prison's

24  discretionary authority; (2) the duration of the condition, and the degree of restraint imposed; and

25  (3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Serrano*

26  *v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin*, 515 U.S. at 486-87).

27        Here, plaintiff alleges that he has a liberty interest in remaining free from the restrictions

28                                                    - 7 -

1   placed upon him via the operating procedure.  Specifically, plaintiff asserts that he has been

2   illegitimately denied personal phone calls, electrical appliances, and canteen privileges for six

3   months; all visitations for the period of one year; and participation in the "package program."  It is

4   settled law that the loss of personal phone calls, electrical appliances, canteen privileges, and

5   participation in the package program does not constitute a liberty interest.  *See Keenan v. Hall*, 83

6   F.3d 1083, 1092 (9th Cir. 1996); *Coakley v. Murphy*, 884 F.2d 1218, 1221 (9th Cir. 1989) (no

7   constitutional right to rehabilitation).  Although plaintiff claims that he has a liberty interest in all

8   visitation, the court disagrees.  Analyzing the imposition of a loss of visitation in light of the factors

9   in *Serrano*, the court finds, with one exception, that it does not constitute a constitutionally protected

10  interest.  The condition mirrors that of other inmates in administrative segregation, and as plaintiff

11  describes, the prison has the authority under its administrative regulations to restrict visitation.

12  Plaintiff's loss of visitation is limited to the period of one year, and he does not state that the loss of

13  visitation in any way will affect the length of his sentence.  Therefore, the court finds that the

14  sanctions imposed by defendant does not deny plaintiff of a constitutionally protected liberty interest.

15      However, the court notes that plaintiff has a right to contact visitation with an attorney.  *See*

16  *Keenan*, 83 F.3d at 1092.  Although the court liberally construes *pro se* pleadings, it cannot read

17  facts into a pleading itself.  That said, the court recognizes that plaintiff may have been denied such

18  an attorney visit; therefore, the court dismisses the claim without prejudice.

19          **2.     Defendants Oxborough, Brooks, Endel, and McDaniel**

20      Plaintiff claims defendants Oxborough, Brooks, Endel, and McDaniel violated his Fourteenth

21  Amendment rights when they failed to follow the policies and regulations regarding periodic

22  hearings.  Specifically, plaintiff claims that the 167 days he spent in administrative segregation

23  constitutes an "atypical and significant hardship."

24      The Constitution provides no liberty interest to be free from administrative segregation.

25  *Hewitt v. Helms*, 459 U.S. 460, 166-68 (1983); *Smith v. Noonan*, 992 F.2d 987, 989 (9th Cir. 1993).

26  However, when a prisoner is placed in administrative segregation, due process requires prison

27  officials to: (1) conduct an informal nonadversary review of the evidence justifying the decision to

28

- 8 -

1   segregate the prisoner within a reasonable time of placing the prisoner in administrative segregation;

2   (2) provide the prisoner with some notice of the charges before the review; and (3) give the prisoner

3   an opportunity to respond to the charges. *See Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir.

4   1986), *abrogated in part on other grounds by Sandin*, 515 U.S. 472. The prisoner is not entitled to

5   a "detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity

6   to present witnesses, or a written decision describing the reasons for placing the prisoner in

7   administrative segregation." *Id.* at 1100-01. If a prisoner is to be retained in administrative

8   segregation, officials must periodically review the initial placement. *Id.* at 1101.

9        Here, plaintiff alleges that defendants failed to administer a classification review with the

10   time period prescribed in prison regulations. The court does not comment on whether the regulation

11   itself creates a constitutionally protected liberty interest. However, plaintiff appears to state that

12   defendants failed to review his continued housing in administrative segregation for a period of at

13   least 167 days. To the extent that *Toussaint* holds inmates have a due process right in periodic

14   review of their continued housing in administrative segregation, plaintiff has stated a colorable due

15   process claim.

16        **3.   Defendant Bryant**

17        Plaintiff contends that defendant Bryant violated his Fourteenth Amendment rights when he

18   took his property in retaliation over plaintiff's religious tenets (#37, p. 12). Presumably, plaintiff

19   brings this claim under due process because he finds that a prison official's failure to follow prison

20   regulations amounts to a deprivation of due process under the Fourteenth Amendment. The court

21   disagrees, but it finds that the facts alleged constitute claims under the First and Eighth

22   Amendments.[1]

23        As discussed above, *Sandin* has limited state created liberty interests to those that constitute

24   an atypical and significant hardship. Indeed, defendant Bryant's alleged failure to supply plaintiff

25

26        [1]   The court acknowledges that in the case of a *pro se* litigant, such as this, it must take a broader view as to the specific legal theories and look to whether the facts state a claim. *See Fontana v.*

27   *Haskins*, 262 F.3d 871, 877 (9th Cir. 2001) ("Specific legal theories need not be pleaded so long as sufficient factual averments show that the claimant may be entitled to some relief.").

28                                          - 9 -

1  with basic necessities constitutes such hardship. However, the court does not address this claim

2  under the Fourteenth Amendment, rather it finds it proper to address it under the Eighth Amendment.

3  *See e.g. Albright v. Oliver*, 510 U.S. 266, 273-74 (1994) ("Where a particular amendment provides

4  an explicit textual source of constitutional protection against a particular sort of government

5  behavior, that Amendment, not the more generalized notion of substantive due process, must be the

6  guide for analyzing a plaintiff's claims."). The court finds that plaintiff's factual averments more

7  properly state a colorable claim for retaliation under the First Amendment as well as a conditions

8  of confinement claim under the Eighth Amendment. The court previously addressed the retaliation

9  claim, *see* Part III.A.1.b, and the court addresses under the Eight Amendment below.

10  **B.      Eighth Amendment Conditions of Confinement Claim**

11  **         1.      Defendant Bryant**

12          Plaintiff contends that defendant Bryant left him without basic necessities when he took all

13  of plaintiff's property to his office for two days.

14          The conditions under which a prisoner is confined are subject to scrutiny under the Eighth

15  Amendment. *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment prohibits the

16  imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity,

17  civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). To assert

18  an Eighth Amendment claim for deprivation of humane conditions of confinement, a prisoner must

19  satisfy two requirements: one objective and one subjective. *Farmer v Brennan*, 511 U.S. 825, 834

20  (1994); *Allen v. Sakai*, 48 F.3d 1082, 1087 (9th Cir. 1994).

21          Under the objective requirement, the plaintiff must allege facts sufficient to show that "a

22  prison official's acts or omissions . . . result[ed] in the denial of the 'minimal civilized measure of

23  life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).

24  Although prison conditions may be harsh, prison officials must provide prisoners with food,

25  clothing, shelter, sanitation, and medical care. *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir. 1996).

26  "The circumstances, nature and duration of a deprivation of necessities must be considered in

27  determining whether a constitutional violation has occurred." *Johnson v. Lewis*, 217 F.3d 726, 731

28

- 10 -

1  (9th Cir. 2000). "The more basic the need, the shorter time it can be withheld." *Id.* (quoting

2  *Hoptowit v. Ray*, 682 F.2d 1237, 1259 (9th Cir. 1982)).

3  The subjective requirement, relating to the defendant's state of mind, requires that the

4  plaintiff allege facts sufficient to show "deliberate indifference." *Allen*, 48 F.3d at 1087.

5  "Deliberate indifference" exists when a prison official "knows of and disregards an excessive risk

6  to inmate health and safety; the official must be both aware of facts from which the inference could

7  be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

8  *Farmer*, 511 U.S. at 837.

9  Further, "[i]nmates have the right to personal hygiene supplies such as toothbrushes and

10  soap." *Keenan*, 83 F.3d at 1091, *amended by* 135 F.3d 1318 (9th Cir. 1998). Also, "[t]he denial of

11  adequate clothing can inflict pain under the Eighth Amendment." *Walker v. Sumner*, 14 F.3d 1415,

12  1421 (9th Cir. 1994), *abrogated in part on other grounds by Sandin*, 515 U.S. at 472.

13  Here, plaintiff claims that defendant Bryant left him with "no clothing for warmth, no

14  hygiene items, no soap, no shampoo, and no legal records" (#37, p. 12). Plaintiff pleads facts that

15  suggest that defendant Bryant took his property with knowing disregard to plaintiff's health and

16  safety. Liberally construing the complaint, plaintiff has stated a colorable Eighth Amendment

17  condition of confinement claim.

18  **III. Recommendation**

19  **IT IS THEREFORE RECOMMENDED** that the clerk be directed to **FILE** the complaint.

20  **IT IS FURTHER RECOMMENDED** that plaintiff's retaliation claim in count I against

21  defendants Neagle, Bryant, and McDaniel be allowed to **PROCEED**.

22  **IT IS FURTHER RECOMMENDED** that plaintiff's due process claim in count II against

23  defendants Brooks, Endel, and McDaniel be allowed to **PROCEED**.

24  **IT IS FURTHER RECOMMENDED** that plaintiff's claim in count II against defendant

25  Bryant with respect to plaintiff's conditions of confinement be allowed to **PROCEED**.

26  **IT IS FURTHER RECOMMENDED** that plaintiff's claim within Count I that defendant

27  McDaniel violated his First Amendment right to access the courts be **DISMISSED** without

28

1  prejudice.

2          **IT IS FURTHER RECOMMENDED** that plaintiff's claim within Count II that defendant

3  McDaniel violated his due process rights be **DISMISSED** without prejudice.

4          **IT IS FURTHER RECOMMENDED** that plaintiff's claims in Count II that defendant

5  Bryant violated his due process right in seizure of his property be **DISMISSED** without prejudice.

6          **IT IS FURTHER RECOMMENDED** that the clerk be ordered to **electronically serve a**

7  **copy of this Order, along with a copy of Plaintiff's First Amended Complaint, on the Office**

8  **of the Attorney General of the State of Nevada, attention Pamela Sharp.** The Attorney General

9  shall file and serve an answer or other response to the First Amended Complaint within **thirty (30)**

10  **days** of the date of entry of this Order.

11          **IT IS FURTHER RECOMMENDED** that if the Attorney General does not accept service

12  of process for any named defendant(s), then plaintiff must file a motion identifying the unserved

13  defendant(s), requesting issuance of summons for the unserved defendant(s), and specifying the full

14  name(s) and address(es) of the unserved defendant(s).

15          **IT IS FURTHER RECOMMENDED** that plaintiff's motion for summons on additional

16  defendants (#38) be **DENIED** without prejudice as moot with leave to renew the motion should the

17  Office of the Attorney General of the State of Nevada not accept service.

18

19  **DATED:**        August 27, 2010.

20

21

22                                              UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28
                                         - 12 -